THE STATE OF TEXAS v. INTERNATIONAL & G. N. R. R. Co.

(Case No. 4546.)

1. CONSTRUCTIVE REPEAL.— A statute which as to a certain subject matter of a previous statute creates a new, entire and independent system respecting that subject matter, will be held to repeal, without express words to that effect, so much of the prior statute as is inconsistent therewith.
2. CONSTRUCTION OF STATUTES —EXPRESS REPEAL.— When express words of repeal, so far as two statutes are inconsistent, are contained in the subsequent statute, there is no room for construction save as to the question of conflict, and in so far as they so conflict the latter must prevail.
3. FORFEITURE OF LAND GRANT.— The act of March 10, 1875, substituting for the causes and extent of forfeiture the failure to build the railway at the yearly rate of forty miles (or eighty miles in two years), and on failure, a forfeiture of the land grants upon that portion of the road not so constructed, is a repeal of so much of the original act (August 5, 1870) incorporating said railroad company to the extent substituted thereby; and upon the failure to build said road at the rate of eighty miles every two years, the defendant company forfeited the right to the land grant as to that part of the road not so built. Such forfeiture is the extent of the penalty for such failure.
4. SAME — EXTENT OF.— After a forfeiture incurred by a failure to construct eighty miles in two years, a rapid construction so as to complete the entire road in the time contemplated in the relief act will not restore the right to the land grant so forfeited.
5. SAME — LANDS GRANTED NOT AFFECTED BY SUBSEQUENT FAILURE.— A grant of lands upon a completed section of ten miles is not affected by a subsequent failure to construct at the rate required by the relief law.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

[The following statement was prepared by the judge delivering the opinion of the court, and is inserted in full:]

This is a case to which precedence is given under the rules. The following statement, taken from the brief of the learned counsel for the appellant, together with the subjoined statement of the facts

and law found by the court below, will present fully the points in issue:

This is a suit instituted on the 4th of May, 1880, by the then attorney general, under sec. 22, art. IV, of the constitution, against the International & Great Northern Railroad Company, seeking a forfeiture of its charter for alleged failure to construct the railway as required to do by its said charter and the act amendatory thereof.

On March 17, 1881, an amended original petition was filed by the present incumbent of the attorney general's office, wherein it was alleged that by the terms of the act of the 10th of March, 1875, defendant was required to begin at either one end or the other of its road already built,— that is to say, either at Longview or Rockdale,— and to built and complete the construction of the same from the city of Jefferson to the terminus on the Rio Grande, at the rate of at least forty miles each year, or of eighty miles every two years, counting from the 1st day of July, 1875, and that on failure so to do, *in addition* to the forfeitures and penalties provided in the original act of the 5th of August, 1870, chartering the International Railroad Company, it was enacted that the said consolidated company should forfeit all right to the lands granted by the said act of the 10th of March, 1875, upon that portion of said railroad which the said company should fail to construct; alleging further a full compliance on the part of the state of Texas with all the terms of the original and amendatory acts, and an utter failure and refusal on the part of the defendant corporation to comply with the terms of said acts in the matter of building its said road at the rate of forty miles every year, or of eighty miles every two years. Wherefore and by reason of all which, it was prayed that a decree should be rendered forfeiting the charter of the defendant company, and relieving the state of Texas from all obligations to grant any lands to the said defendant company for any portion of its road save and except that for which lands had already been granted and received by the defendant; and also that a decree be rendered releasing the state from any further obligation to exempt defendant from taxation, and enjoining defendant, its successors, officers, etc., from exercising or enjoying any of the rights, privileges, powers, franchises or immunities granted in the said charter or the acts amendatory thereof.

Which defendant, by its second amended original answer, in lieu of all former pleadings, denied generally and specially, alleging that the act of the 10th of March, 1875, which modified its original charter, and under the terms and provisions of which it has

since acted, was intended to substitute, according to the supreme power and grace of the state, terms less onerous to defendant and preferred by the state to those contained in its original charter, and was of a highly remedial character, and should receive the liberal and favorable construction of the court, if in anywise necessary for defendant's protection; alleging, also, a full compliance on its part with the terms of said act of March 10, 1875, and a non-compliance therewith on the part of the state on all that portion of defendant's road lying west of the city of Austin; that it is now entitled to land certificates from Austin to Laredo, a distance of two hundred and forty miles, and to exemption from taxation on that portion of its road and property in like manner as it is entitled from Longview to Rockdale and Austin, and to all the rights and privileges granted by its original charter and the said amendment, and that the same are "contracts protected against violation by the constitution and laws of the state of Texas and by the constitution of the United States;" that this suit was brought without ground in law or equity therefor, and before the expiration of the time granted defendant within which to build and complete said railroad and perform all the terms of its charter and the amendment thereto, concluding with a prayer for the dismissal of the suit for the want of any equity therein.

This cause was tried by the court without the intervention of a jury, and the conclusions of fact and of law applicable thereto were found separately by the court, and it was decreed by the court that the defendant company had and by said judgment should forfeit its right to the land grant under the act of the 10th of March, 1875, as to all of its road not completed at the date of the filing of this suit on the 4th of May, 1880, that is to say, from Austin to Laredo, and from a point to which it was completed a few miles north of Longview to Jefferson, and that as to these two sections of its road said company was not entitled to said land grant.

That as to all other matters in the state's petition complained of, and all other relief therein asked, the prayer of petitioner be denied.

To which judgment of the court the attorney general, on behalf of the state, excepted, gave notice of appeal, assigned errors, and has brought the cause here for revision.

STATEMENT OF THE FACTS AND POINTS OF LAW FOUND BY COURT.

The evidence on the trial is given below.

1. "An act to incorporate the International Railroad Company and to provide for the aid of the state of Texas in constructing the

same," approved August 5, 1870. Special Laws 12th Leg., ch. 54, pp. 104–110.

2. " An act for the relief of the International Railroad Company, now consolidated with the Houston & Great Northern Railroad Company under the name of the ' International & Great Northern Railroad Company,' " approved March 10, 1875. Special Laws 14th Leg., ch. 49, pp. 69–73.

3. Acceptance of the terms of the relief act, approved March 10, 1875, by the stockholders of the International & Great Northern Railroad Company, filed with the secretary of state, April 2, 1875.

4. Inspection report of King and Sumner of twenty-four miles of the International Railroad between the Brazos river west to Rockdale, showing its proper construction, and dated February 5, 1874.

In this connection the attorney general stated to the court that no forfeiture was sought upon any act prior to the " relief act," March 10, 1875.

5. Inspection report of Hardeman, showing proper construction, etc., of the railway to Congress Avenue, Austin, from Rockdale, a distance of about sixty-one miles. Report filed January 30, 1877.

6. It was shown that from a point east of Longview the defendant company had constructed one hundred and seventy-six miles, to the Brazos near Hearne, of completed road, being about two hundred miles of completed road, from Longview to Rockdale.

7. The road was completed from Rockdale to Palm's Valley, near Round Rock, before July 15, 1876, and from thence to Austin before December 28, 1876.

8. In 1871 the route had been surveyed between Longview and Jefferson, the right of way partially obtained, and depot grounds purchased at Jefferson.

9. Between January 1, and May 1, 1880, survey of the route between Austin and San Antonio was made and right of way partially obtained. About May 1, 1880, work was begun in the extension of the road beyond Austin, and the work was completed to San Antonio by February 1, 1881, and to Laredo, on the Rio Grande, December 15, 1881.

10. The defendant company has received five thousand two hundred and thirty-eight land certificates from the state for six hundred and forty acres each, under the provisions of the charter. These certificates were worth from $240 to $300 each. None of the certificates nor any of the land is owned by the defendant company, all having been sold.

11. The exemption from taxation has been enjoyed as provided

in the relief act, save that suits are pending in some counties contesting the exemption.

12. That part of the road between Austin and San Antonio is the most valuable, earning more. The road from San Antonio to Laredo does not produce any net revenue.

13. It was estimated by the comptroller as witness that the road, with depots, running stock, etc., was worth $15,000 per mile.

14. The fifteenth legislature convened April 18th, and adjourned August 21, 1876.

15. The "ordinance in relation to railroads" (of the constitutional convention of 1875) in evidence provided that "no railroad company chartered or holding grants under this state . . . shall be considered as having lost any of its rights, privileges or grants prior to the close of the next session of the legislature of this state by virtue of the lapse of time between now and that time."

16. The defendant company was refused bonds upon the construction of parts of the road prior to the compromise act. Suit was brought November 18, 1873, to compel the issuance of the bonds. The suit terminated in the decision by the supreme court refusing relief to the company. 40 Tex., 537.

17. Reports of W. P. Hardeman, inspector appointed by the governor, showed that since the filing of this suit the defendant company has constructed the road from Austin to San Antonio (eighty miles), thence to Laredo (one hundred and fifty-four miles); total about two hundred and thirty-three miles. The report shows that the road is well built, furnished, etc., in accordance, as to work, etc., with its charter.

18. The executive officers of the state have refused to issue land certificates for the road completed beyond Austin; and, on the appointment of Hardeman to inspect, it was known that such inspection was not to be considered a basis for claiming certificates.

19. The distance from Jefferson to Longview is about sixty miles, thence to Rockdale two hundred, thence to Austin about sixty-one miles, thence to San Antonio eighty miles, thence to Laredo about one hundred and fifty-four. Of the route from Longview to Laredo about three hundred and fifty miles constituted the contemplated road to be built March 10, 1875, when the land grant was made.

There being no dispute as to the facts, it devolves upon the court to ascertain the law.

The "Act for the relief of the International Railroad Company," etc., approved March 10, 1875, expressly repeals "all other laws and parts of laws inconsistent with" it. No question, therefore, of im-

plied repeal arises to control the full effect of every part of this compromise act.

The land grant of twenty sections per mile for the road between Jefferson and Laredo is substituted instead of the bonds granted in the original charter. Total and complete exemption from taxation extending to the lands granted for twenty-five years is given instead of for five years. The character of road to be constructed is defined by reference to the general railroad laws. The lands are to be sold within fifteen and twenty years, etc.

Section 4 of the act of March 10, 1875, is as follows: "That if said company shall fail to complete the construction of said railroad from the city of Jefferson to the terminus of said railroad on the Rio Grande at the rate of at least forty miles each year, or of eighty miles every two years, counting from the 1st day of July, 1875, they shall forfeit all rights to the lands by this act granted upon that portion of said railroad which they shall thus fail to construct."

This fourth section of the relief act works material changes in the original charter.

1. In fixing the northern terminus at Jefferson and requiring its construction by certain intermediate points (San Marcos and New Braunfels) from Jefferson to Laredo.

2. In altering the rate of construction per year to forty miles, or eighty miles every two years, between Jefferson and Laredo.

3. A penalty is fixed upon the failure to construct at the *new* rate, of forfeiture of all right to lands, granted by the relief act, upon that part of the road not so constructed.

The thirteenth section of the original act is superseded as to the northern terminus, and in the rate of construction, and in the character of road to be constructed.

The fifteenth section, so far as it refers to the thirteenth for the time within which the railroad shall be completed, is altered, and inasmuch as another penalty is imposed upon the failure to construct upon the new rate, such new penalty is incurred upon the breach of the conditions imposing it. The new penalty and conditions are inconsistent with the original; the original are therefore not, in effect, repealed by the express terms of the relief law. The court therefore holds:

1. The failure to construct the forty miles of completed road from Palm's Valley, near Round Rock, within one year, or eighty miles within two years, from July 1, 1876, is a cause of forfeiture

of certain rights of the defendant company existing at the filing of this suit.

2. That the question has been decided by the executive officers, so far as to determine their own action, in view of the fact that such action does not bind future or incoming officials, does not present a reason why the state should not have the same or like judicial action upon it. Nor does it matter that pending the suit the value of the rights in controversy have become but nominal.

3. The extent of the forfeiture must be determined by the statute. In it it is declared that the owners of the franchise "shall forfeit all right to the land by this act granted upon that portion of said railroad which they thus fail to construct." The court cannot do otherwise than declare this result as applying to the facts in this case.

4. Nor is this loss in any part or to any extent regained by the speedy construction of the road, as shown by the pleading and evidence, after suit was brought to enforce the forfeiture.

5. The exemption from taxation is expressly granted in the first section of the act of March 10, 1875.

The original rate of construction in thirteenth section of the act of August 5, 1870, being superseded by the rate of forty miles in one year, or by eighty miles in two years, the penalty affixed in section 15 of the original charter, based upon the repealed rate of construction, no longer remains in force.

Nor can the penalty in the fifteenth section attach to a failure to build upon the new or substituted rate, for to that failure a definite penalty is affixed in the act of March 10, 1875, which penalty has been fully suffered, since the forfeiture of the land grant upon the road not constructed upon the new rate is declared against the defendant company.

This exemption could not be allowed unless, as here, it is expressly and clearly given. It is conceded that the grant of exemption should be strictly construed. But finding it clearly given, and nothing to defeat it, it must be recognized.

6. Nor is there anything in the charter as amended taking from the company the right to construct the railway between the points (Jefferson and Laredo) upon the mere failure to construct at the rate prescribed as a condition of receiving the land grant. The purpose of the subsidy (both bonds and lands) was "to promote the rapid construction of the said railway," etc. The time for the entire work under the computation in the amended charter has not

elapsed.    The route not built upon March 10, 1875, was about three hundred and fifty miles between Jefferson and Laredo.    At the rate of forty miles each year, $\frac{350}{40}=8$ years were regarded as the proper time in which to build the entire road.    This extends to July 1, 1883.    The road has been further advanced toward completion than the rate of construction in the law requires.    Only about fifty miles of the route remains unbuilt.    There can be no complaint at this time of non-user of the franchise.    But none is alleged in the petition merely as such.

7. The state will not be without remedy for non-user should the defendant company fail to construct the road upon the remaining fifty miles such as the charter requires and within a reasonable time.

8. The charter, original and as amended, treats the franchise as susceptible of limitation to that part of the route upon which the road shall be completed.

9. Even if a different rule as to exemption from taxation could apply to the lands granted, the holders not being before the court their rights cannot be determined.

10. The grant of lands for the line from Rockdale to Palm Valley was saved by the ordinance of the constitutional convention.    The legislature adjourned August 21st; the section of the road was completed by July 15, 1876.

11. The land grant for the twenty-one miles from Palm Valley to Austin is within the terms of the law.    The road was built by December 28, 1876, and within one year after July 1, 1876.

The law authorized the issuance of certificates upon completion of sections of ten miles.    The forfeiture for not completing the forty miles would not destroy the right to the land upon that part upon which the road had been constructed within the terms of the law.

12. Damages are not proven and cannot be allowed.

It will be decreed:

1. That the land grant be adjudged forfeited upon all the railroad between Jefferson and Laredo not completed at the filing of this suit, viz., from Austin to Laredo, and from a point north of Longview to Jefferson.

2. That as to other matters asked in the petition the prayer be denied.

3. That the defendant pay costs of suit.

A. S. WALKER,<br>
<em>Judge Sixteenth District, etc.</em>

March 20, 1882.

*J. H. McLeary*, Attorney General, for appellant.

I. The court erred in its conclusion of law that no question of implied repeal arises to control the full effect of every part of the compromise act for the relief of the International Railroad Company, approved March 10, 1875. A later statute repeals a former by implication, when the one is inconsistent with the other, and this principle is in no way changed when the repealing clause of the later statute expressly mentions "such parts of the charter as are inconsistent with this act," as is done by section 8 of the compromise act. Special Laws of 1875, ch. 49, p. 73; Morrow v. Morgan, 48 Tex., 308; H. & T. C. R. R. Co. v. Ford, 53 Tex., 371; Potter's Dwarris on Stat. and Const., pp. 113, 114 *et seq.;* pp. 154 and 155, notes 4 and 5, and cases cited; Pacific R. R. Co. v. Cass County, 12 Am. Railway Rep., 343; Towle v. Marrett, 14 Am. Dec., 209, note on "Repeals by Implication," citing many authorities.

II. From its very language, section 8 of chapter 49 of Special Laws of 1875 (the compromise act of the 10th of March, 1875) only repeals such parts of the (International charter) act of August 5, 1870, as are "inconsistent with the provisions" of the compromise act, and this it would have done whether it contained a clause to that effect or not, and "the question of implied repeal" does arise, and must be considered. Ch. 49, Special Laws of 1875, p. 73, sec. 8; U. S. v. Case of Hair Pencils, 1 Paine, 400; Potter's Dwarris on Stat. and Const., p. 155, and note 5, with authorities cited therein.

III. To repeal a statute by implication there must be such a positive repugnancy between the new law and the old that they cannot stand together, or be consistently reconciled. There should be a manifest and total repugnancy in the provisions of the new law to lead to the conclusion that the later law abrogated or was designed to abrogate the former. Pacific R. R. Co. v. Cass Co., 12 Am. Railway Rep., 343; Pacific R. R. Co. v. Cass Co., 53 Mo., 17; Neill v. Keese, 5 Tex., 32; Walker v. State, 7 Tex. Ct. App., 257; Selman v. Wolfe, 27 Tex., 72; Thouvenin v. Rodrigues, 24 Tex., 468; Napier v. Hodges, 31 Tex., 287; Cain v. State, 20 Tex., 370; Lyon v. Fisk, 1 La. Ann., 444; State v. Brewer, 22 La. Ann., 273; 5 Met., 406; 37 Ind., 111, 284; 1 Kent Com., 466, note *b.*

IV. The court erred in its conclusion of law that inasmuch as another penalty is imposed by the said compromise act upon the failure to construct upon the new rate, such new penalty only is incurred upon the breach of the conditions imposing it; and that the new penalty and conditions being inconsistent with the original,

the original are no longer in effect, but were repealed by the express terms of the relief act. Where, as in this case, the two penalties are for different defaults, and can both be enforced without the one interfering with the other, there is no inconsistency between them, and both stand in force. Special Laws 1870, ch. 54, pp. 104–110; Special Laws 1875, ch. 49, pp. 69–73; also same authorities cited heretofore under first assignment, and especially Broom's Legal Maxims, p. 156.

V. The maxims; "*expressio unius est exclusio alterius*," and "*expressum facit cessare tacitum*," have no application to the penalty denounced in the fourth section of the compromise act. Morrow *v.* Morgan, 48 Tex., 308; Broom's Legal Maxims, pp. 505, 513, 668, 669; Eastern Archipelago Co. *v.* Reg., 75 Eng. Com. Law, 862, 914; and 72 Eng. Com. Law, 323–382.

VI. The court erred in its third conclusion of law, in so far as it declared no other result as applying to the facts in this case than a forfeiture of the land granted by the compromise act upon that portion of the railroad which the owners of the franchise failed to construct in accordance with the requirements of said act. The facts having shown that a forfeiture of the land grant had inured under the fourth section of the compromise act *a fortiori*, had a forfeiture accrued of "all further rights and privileges under the charter," the time for construction allowed in the first case being much longer than in the second. Special Laws 12th Leg., ch. 54, sec. 15, pp. 110, 111; Special Laws 14th Leg., 2d sess., ch. 49, p. 72.

VII. A comparison of section 4 of the compromise act with sections 13 and 15 of the charter will show that any default in time of construction, which would be sufficient whereon to base a forfeiture of the land grant, would be at the same time more than sufficient to work a forfeiture of the charter, should it be demanded by the state. Special Laws 1870, pp. 109, 110; Special Laws 1875, p. 72; Broom's Legal Maxims, p. 669, and cases cited in notes thereto.

VIII. Where there are different statutes *in pari materia*, though made at different times, or expired, and not referring to each other, they shall be taken and construed together as one system, and as explanatory of each other. Selman *v.* Wolfe, 27 Tex., 72; Cain *v.* State, 20 Tex., 362; King *v.* Lauderdale, 1 Burr., 447; Bradshaw *v.* Tenn., 1 Yerg., 180; Lovett *v.* Casey, 17 Tex., 594; 1 Kent Com., 463; Smith's Com. Stat. and Const., 751 *et seq.;* Sedgwick on Stat. Law, 247, 251; 6 Ind., 83, 354.

IX. The court erred in its fifth conclusion of law, that the company, in failing to build at the new rate of construction, did not,

under section 15 of the original act of August 5, 1870, forfeit its right to the exemption from taxation guarantied by section 1 of the relief act of the 10th of March, 1875. The force of section 15 of the charter was not so altered or limited by the compromise act as to secure the company in its exemption from taxation whether it built its road, or any portion thereof, within a certain time prescribed by law or not. Original charter and compromise act *in extenso;* Special Laws 12th Leg., pp. 104–110; Special Laws 14th Leg., 2d sess., pp. 69–73; Bailey *v.* Magwire, 22 Wall., 226, 227.

X. Though the fourth section of the compromise act may have extended the time within which the whole road and portions thereof might be built, it did not, by providing for a forfeiture of the lands therein granted, in case of failure to comply, take away all forfeitures which might be incurred under the original act of incorporation. Broom's Legal Maxims, p. 669.

XI. The court erred in its sixth conclusion of law, especially in holding that the company had the legal right to construct the railway between the points Jefferson and Laredo, after a failure on its part to construct at the rate prescribed as a condition of receiving the land grant; and that there can be no complaint at this time of a non-user of the franchise. The charter and the act amendatory thereof both prescribe that a certain distance shall be completed each year, or twice that distance every two years, and in neither of them is any time prescribed in gross for the completion of the entire road from Jefferson to Laredo. See Special Laws 12th. Leg., ch. 54, sec. 13, p. 109; Special Laws 14th Leg., 2d sess., ch. 49, sec. 4, p. 72.

XII. The inference which the court makes by a mathematical, calculation is not allowable under the correct construction of these two statutes taken together, or either taken separately. Sedg. on Stat. and Const., pp. 237, 238, 247–250; Selman *v.* Wolfe, 27 Tex., 72; Walker *v.* State, 7 Tex. Ct. App., 259, 260, 261; Taylor *v.* State, 4 Tex. Ct. App., 169; Napier *v.* Hodges, 31 Tex., 287; 1 Pasch. Dig. Laws, 637, and authorities there cited.

XIII. At the time suit was instituted, the 4th of May, 1880, there was a non-user of the franchise, of which the state justly made complaint, and there is no provision in the law for curing this failure by increased construction under the goad of a prosecution of a suit for forfeiture of charter. The case should have been adjudicated on the facts as they stood at the time suit was instituted. Special Laws 12th Leg., ch. 54; Hearne *v.* Erhard, 33 Tex., 66.

XIV. The rights of the parties are fixed at the beginning of the

suit, and must be determined as they then existed. "*Pendente lite nihil innovetur.*" Sampson *v.* Wyett, 49 Tex., 632, 633; Jemison *v.* Halbert, 47 Tex., 188; Hearne *v.* Erhard, 33 Tex., 66; Stewart *v.* Kemp, 54 Tex., 251.

XV. The court erred in its tenth conclusion of law, in holding that the ordinance of the constitutional convention of 1875 in any way inured to the benefit of this company. The ordinance of the constitutional convention passed on the 20th day of November, 1875, only prevented forfeitures on any railroad between that date and the 21st of August, 1876, and this company had not incurred a forfeiture prior to the last named date. Ordinance Const. Con., Const., State Ed., p. 65; Special Laws 14th Leg., 2d sess., ch. 49.

XVI. The court erred in its eleventh conclusion of law, in holding that the land grant from Palm Valley to Austin is within the terms of the law. Though the sections of ten miles between Palm Valley and Austin may have been constructed within the time prescribed by law, the sections of forty miles and eighty miles westward from Palm Valley had not been constructed within the limited time, and the charter being forfeited, the land grant went with it. Charter of defendant company.

XVII. The court erred in holding that section 15 of the act of August 5, 1870, was repealed either expressly or by implication by any portion of the compromise act of March 10, 1875. There was no express repeal of section 15, it not being named in the repealing section. Special Laws 14th Leg., 2d sess., ch. 49, sec. 8, p. 73. There was no repeal by implication, there being no inconsistency between section 15 of the charter and the amendatory act. Special Laws 12th Leg., ch. 54, sec. 15, pp. 109, 110; Special Laws 14th Leg., 2d sess., ch. 49, pp. 69–73, and authorities cited under the third proposition under first assignment.

XVIII. The court erred in its judgment in so far as it refused to decree a forfeiture of the charter of the corporation, and a release of the state of Texas from any further obligation to exempt the company from taxation. The company had incurred a forfeiture of their charter by failing to construct portions of their road within the time prescribed either in the original charter or the act amendatory thereof. Special Laws 12th Leg., ch. 54, secs. 13 and 15, pp. 109, 110; Special Laws 14th Leg., 2d sess., ch. 49, sec. 4, p. 72.

XIX. The company had forfeited the exemption from taxation, together with other rights under its charter, by failing to construct its road eighty miles west from Palm Valley within the two years allowed by law.

XX. The court erred in its judgment in so far as it refused to decree for the state of Texas all the relief prayed for in its amended original petition.

The state prayed as follows:

" That on a final trial and hearing of this cause plaintiff may have judgment against the said company for the damages as herein stated, to wit, in the sum of ten millions of dollars, and that a decree of forfeiture may be rendered and entered up forfeiting the charter of the International Railroad Company and of the International & Great Northern Railroad Company, and also that a decree be rendered and entered up relieving the state of Texas from any and all obligations to grant any lands to the defendant corporation for any portion of its road save and except that for which lands have already been granted and received by the defendant; and also, that a decree be rendered and entered up releasing the state from any further obligation to exempt defendant or its successors, or its or their capital stock, rights, franchises, railroads, rolling stock or any other property, from any state, county, town, city or municipal, or other taxation, and declaring the said defendant and its successors, and its and their capital stock, rights, franchises, railroads, rolling stock and all other property, subject to all taxes, whether state, county, town, city or municipal, within the state of Texas.

. "And that decree be rendered and entered up continually and perpetually restraining, forbidding and enjoining the defendant or its successors, its or their officers, agents, assigns or representatives, from exercising or enjoying any of the rights, privileges, powers, franchises or immunities granted in said charter or the acts amendatory thereof."

The full measure of relief prayed for should have been granted.

*Baker & Botts* and *Ballinger & Mott*, for appellee.

I. The court did not err in holding " that no question of implied repeal arises to control the full effect of every part of the compromise act for the relief of the International Railroad, approved 10th March, 1875," because the relief act of the 10th of March, 1875, contains an express repeal of " such parts of the original charter, and all other laws and parts of laws inconsistent with the provisions of said relief act;" and where there is an express repeal, there can be no repeal by implication as to the same subject matter.    Potter's Dwarris, 113, 114, 126; Sedgwick on Const., 97, 98, 104.

II. There is no error in the conclusion of law arrived at as stated, because if, as a question of fact, it is true that the relief act of 10th

March, 1875, prescribed another and a different penalty for failure to build at the new rate prescribed by it from the rate and penalty prescribed by the original charter, then there is an inconsistency between the rates of progress required by the said acts and an inconsistency between the penalties prescribed by them; and the relief act says: "Such parts of the original charter as are inconsistent with the provisions of this (the relief) act are hereby repealed." Sec. 8.

There is no time specified in the relief act for the completion of the road. Nor is there any rate of progress specified, except as a condition for the land grant; and on this subject, sec. 4 of the relief act provides as follows: "If said company shall fail to complete the construction of its said railroad from the city of Jefferson to its terminus on the Rio Grande, at the rate of at least forty miles each year, or of eighty miles every two years, counting from the 1st of July, 1875, it shall forfeit its right to the lands granted by this act upon such portion of its said road as it thus fails to construct." Sedgwick on Constr. of Stats., 100–5 and note; Hayes v. State, 55 Ind., 9.

III. The proposition on behalf of the state does not show that any question of "implied repeal" should change the construction of the act of 10th March, 1875, made by the court below, so as to affect the result of this case. Same as above. 5 Tex., 418–24; 8 Tex., 62; 21 Tex., 734; 44 Tex., 443; 54 Tex., 450; 13 How., 429; 11 Wall., 92; 7 Otto, 551–2; 67 Barb., 264–5, and citations.

IV. There was no error in "holding that section 15 of the original charter was repealed by the compromise act, either expressly or by implication," because section 15 of the original charter is inconsistent with section 4 of the compromise act; and section 8 of the latter expressly repeals "such parts of the original charter as are inconsistent with the provisions of this (the compromise) act." Sedgwick on Constr. of Stats., 96–101, and notes; Joel v. The State, 28 Tex., 642; Aldridge v. Mardoff, 32 Tex., 205; Brooks v. Hicks, 20 Tex., 667; Rodgers v. Watrous, 8 Tex., 65; Cain v. State, 20 Tex., 370.

V. The court did not err in its judgment in so far as it refused to decree a forfeiture of the charter of the corporation, and a release of the state from any further obligation to exempt the company from taxation, because its judgment is in accordance with the facts and conclusions of law as found, and the facts are not excepted to, and the conclusions of law are correct, as has been shown in the examination of the several assignments of error, which are here referred to in place of a second statement under this proposition.  .  .  .

And in forfeiting a franchise, courts will proceed with extreme caution, and will not decree forfeiture except for a plain abuse of power by which the corporation fails to fulfill the design and purpose of its organization. High on Ex. Rem., sec. 649; State v. Com. Bank, 10 Ohio, 535; So. Pac. R. R. Co. v. State, 24 Tex., 130. Forfeitures are not favored in law. The cause, to be a good one, must generally be willful abuse, or palpable neglect of duty. Pierce on Railways, pp. 12, 13; Angell & Ames on Corp., sec. 776. The wrong complained of must relate to the essence of the corporation grant and the contract between the parties. Field on Corp., sec. 455; 6 Ired., sec. 461. The wrong here complained of does relate to the essence of the corporation grant and the contract between the parties, but the proof shows clearly and unquestionably that this corporation so far, even to this good day, has more than fulfilled the design and purpose of its incorporation.

BONNER, ASSOCIATE JUSTICE.— The questions of law in this case lie within a very narrow compass, and arise upon the construction of certain acts of the legislature which relate to the International, now consolidated with the Houston &· Great Northern Railroad Company, under the name International & Great Northern Railroad Company.

The labors of the court have been very much lessened by the clear and comprehensive findings of the learned judge who tried the cause below, and the full and exhaustive briefs of the able counsel for both parties. As deduced from the briefs and argument of counsel, the two principal questions presented for our decision are:

*First.* Whether the act for the relief of the consolidated International & Great Northern Railroad Company, approved March 10, 1875 (2d sess. 14th Leg., 69), was so far inconsistent with the original act incorporating the International Railroad Company, passed August 5, 1870 (called session, 12th Leg., 104), as to operate as a repeal of the same to the extent that it prescribes a new and different condition as ground for declaration of forfeiture.

*Second.* If so, then what was the effect of a failure, under section 4 of the act last passed, to build forty miles of road each year, or eighty miles every two years? Did it forfeit the charter of the company, or simply the land grant? And if the latter, then was it forfeited for that portion only of said road which it thus failed to construct, or for the whole extent of the road not then completed?

I. As to the repeal of the original act by the subsequent relief or compromise act, as it is generally called.

This last named act provides, in express terms, that it repeals so much of the original act as is inconsistent with it.

Section 13 of the original charter is as follows: " Said company shall commence work upon its railroad within six months after the passage of this act, and shall complete at least fifty (50) miles of said main trunk within eighteen months after the passage of this act, and annually thereafter seventy-five miles, or one hundred and fifty miles every two years, on all said lines east of San Antonio, and west of that point to the Rio Grande river forty miles annually, or shall complete the same within four years after reaching said city of San Antonio from the east. The railroad of said company shall be thoroughly and substantially built, and fully equal to the standard of first class railroads in the United States. Its iron rails shall be of weight not less than fifty pounds to the lineal yard, of approved pattern and good quality. It shall provide a good and sufficient amount of rolling stock for the prompt and efficient operation of its road, and shall establish depots and sta-tions at such places as shall be conducive to the interests of the people and to the proper transaction of the business of the com-pany."

Section 4 of the relief act reads: "That if said company shall fail to complete the construction of said railroad from the city of Jefferson to the terminus of said railroad on the Rio Grande at the rate of at least forty miles each year, or of eighty miles every two years, counting from the 1st day of July, 1875, they shall forfeit all right to the lands by this act granted upon that portion of said road which they fail thus to construct."

. Section 15 of the original charter is as follows: " Any failure on the part of said company to complete its railroad within the time as stated in this charter, shall work a forfeiture of all further rights and privileges under the same, provided that such failure on the part of said company be not caused by domestic violence, epidemics, floods, or other acts of God. In case the company chartered in this act shall at any time fail to construct the length of railroad as hereinbefore specified, then the governor is authorized to contract with any other corporation or company for the continued construc-tion thereof, under the terms of this charter, for such part of said railroad as may not have been completed."

The authorities are numerous that constructive repeals, or repeals by implication, are not to be favored; but even in such cases it is the general rule, that a subsequent statute, which as to a certain

subject matter of a previous one creates a new, entire and independent system respecting this subject matter, will be held to repeal by implication, without express words to that effect, so much of the prior statute as is inconsistent therewith.   Stirman v. The State, 21 Tex., 736, and authorities cited.

But when, as in the present case, express words of repeal, so far as the two statutes are inconsistent, are contained in the subsequent statute, then there is no room for construction, *save as to the question of conflict;* and in so far as the two statutes do materially conflict, the latter must prevail.

The inconsistencies between the two acts are shown in the findings of the court below.   Also by the brief of counsel for appellee, as follows:

1. In the western terminus of the road.

The charter, section 2, requires the company to build "to the Rio Grande at some point at or near Laredo, as the company may select as affording the best facilities for a continuation of the road to the city of Mexico, and thence to the Pacific Ocean at or near San Blas or Mazatlan."

The relief act required the western terminus to be fixed within one mile of the court-house at Laredo.

2. In the line of location.

The charter required the road to be built via the cities of Austin and San Antonio only.   Sec. 2.

The relief, or compromise act, required it to build also by the towns of San Marcos and New Braunfels, and a depot to be maintained within a mile and a quarter of the court-house of each of said towns.

3. In the time for completion.

The charter required seventy-five miles each year, or one hundred and fifty miles every two years, to be completed after the first eighteen months from date of the charter, to San Antonio; and forty miles annually on from San Antonio west, or to complete it between San Antonio and Laredo within four years.

The relief, or compromise act, "at the rate of at least forty miles each year, or eighty miles every two years, counting from the 1st of July, 1875."

4. In the aid offered by the state.

The charter offered "the bonds of the state to the amount of $10,000 per mile of completed road," to be delivered on completion of each ten miles.

The relief, or compromise act, gave in lieu of said bonds twenty sections of land, or four sections more than the company would have been entitled to under the general law of the state if no other donation had been made; and also offered total exemption from taxation on the International road and its property for twenty-five years, instead of five years as provided in the charter.

5. In the character of the road to be built.

The charter required it to be thoroughly and substantially built, and "fully equal to the standard of first class roads in the United States." The compromise act required it to be built "in a substantial manner and in accordance with the requirements of general railroad law of the state."

6. *In the penalty for failure in the time of building,* the charter provided that a "failure to complete the road within the time therein stated should forfeit all further rights and privileges under the charter."

It further provides: Section 15. "In case the company chartered in this act shall at any time fail to construct the length of railroad as hereinbefore specified, then the governor is authorized to contract with any other corporation or company for the continued construction thereof, under the terms of the charter, for such part of said railroad as may not have been completed."

The amended act contains no authority for construction otherwise than by the company, and takes away the "terms of the charter," which also provides that if the company "fail to complete the construction of said road from the city of Jefferson to its terminus on the Rio Grande, at the rate of at least forty miles each year, or of eighty miles every two years, counting from the 1st of July, 1875, they shall forfeit all right to the lands by this act granted, upon that portion of said railroad which they thus fail to construct."

It is a well known fact that this relief act was one of compromise. This is fully indicated by the preamble, which reads:

"WHEREAS, On the 5th day of August, A. D. 1870, the legislature of the state of Texas passed an act, entitled 'An act to incorporate the International Railroad Company, and to provide for the aid of the state of Texas in constructing the same;' and,

"WHEREAS, By the 9th section of said act, it is claimed the state of Texas obligated itself to donate and grant to the said company the bonds of the state of Texas to the extent and amount of ten thousand dollars per mile for each mile of railroad constructed under said charter; and,

"WHEREAS, The said railroad company has already constructed

about two hundred miles of railroad, in accordance with the provisions of its charter; and,

*      *      *      *      *      *      *      *      *      *

"WHEREAS, Questions have arisen between the state of Texas and said company as to the legal liability of the state to deliver said bonds to said company; and,

"WHEREAS, It is important both to the state and said company that these questions should be definitely settled by a just and reasonable compromise, therefore for that purpose;" therefore, be it enacted, etc.

The terms and provisions of this act were subsequently accepted by the company. This legislative proceeding and its acceptance therefore partake more of the nature of a contract between the state and the company than a mere *ex parte* legislative act; in fact, by section 7 of the act its binding force was made to depend upon this acceptance; in which event, it was declared to be an irrepealable contract between the state and the company. Hence, wherein they may differ, the rules which govern the construction of contracts should apply, rather than those which govern the construction of statutes. The end to be obtained, however, is the same — to ascertain, if possible, the true intention of the parties. One of these rules is, that acts of compromise, in which mutual concessions are made, should receive a liberal construction.

Under the original act the road was required to be built with much more than ordinary rapidity, and as an essential aid to this, the state had obligated to issue bonds to the amount of $10,000 to the mile. These were considered more salable and valuable in the market than the land certificates substituted therefor by the relief act; otherwise the people would not have demanded nor the legislature have passed the act of substitution. This benefit having been given to the state, the corresponding benefit was given to the company to build a less number of miles within a given period — it being required to build only forty miles each year, or eighty miles every two years, by the relief act, whereas, by the original act, it was required to build annually seventy-five miles, or one hundred and fifty every two years. It is not reasonable to suppose that the legislature would have arbitrarily deprived the company of very material aid promised in the original act, and that, too, after the company, on the faith of it, had built two hundred miles of its road, and which aid, doubtless, was one of the main inducements to enter upon the construction, and still hold the company to the strict letter of the original contract as to the rapidity with which the road should be built. Neither is it

reasonable to suppose that the state intended to say to the company, that you shall have a certain donation of land, and which shall be paid for every completed section of ten miles, if you will build forty miles of road each year; and yet when the company has done this, then not only to forfeit this promised aid already earned, but also the very corporate existence of the company itself, because it had not built seventy-five instead of forty miles of road. Certainly such double forfeiture could not have been intended; and if only one of the two forfeitures could be demanded, it must be that contained in the compromise act, and which in express terms repealed the original so far as they were inconsistent.

The law does not favor forfeitures. The wise policy of Texas has ever been to foster and encourage railroad companies, and it is not her true policy, any more than that of the law generally, to forfeit their charters for a mere technical failure to comply with the letter, when the spirit of these charters have been complied with. Although they should be held to a reasonably strict accountability to carry out faithfully the purposes and objects of their creation, yet, unless it clearly appears that they have forfeited their charters, the courts should give that construction to the law which would keep alive, rather than that which would kill. A learned text-writer deduces from the authorities the following general rule on this subject: "The non-performance of the conditions of the act of incorporation is deemed *per se* a misuser sufficient to forfeit the grant on proceedings by information, and in determining whether such a departure from the provisions of the act of incorporation has been made as to work a forfeiture, the same general principles of construction are applicable which govern valuable grants to individuals upon conditions subsequent or precedent. In all such cases a substantial performance of the conditions according to the intent of the charter is all that is required, and slight departures are overlooked." High on Ex. Leg. Rem., § 651.

We are of the opinion that section 4 of the compromise act repealed section 13 of the original act, and was substituted therefor, so far as they pertained to the time within which the road should be built. That under the law as it now stands, it was not intended that the failure of the company to build at least forty miles of road every year, or eighty miles every two years, should work a forfeiture of its charter, but of the land grant only. Whether, under section 15 of the original act, the company would not forfeit its charter in the event it should fail to construct its entire line of road within

the whole time allowed by the compromise act, is not now before us, and no opinion is intended to be intimated upon this question.

II. The second question is presented by the following cross assignment of errors by appellee:

"The court erred in adjudging as forfeited the defendant's right to lands granted under the act of the 10th of March, 1875, on such of its road as was not completed at the time of filing this suit, say from Austin to Laredo, and from a point north of Longview to Jefferson. Because the proof showed, and the court found, that the time has not yet expired within which the defendant had the right to build only eighty miles every two years. And that the road is now completed from Austin to Laredo, and the proof did not show that the state had sustained loss or damage by the failure to construct any part of its road from the 1st of January, 1877, to January, 1880. And because the proof did show that defendant constructed its road from Austin to Laredo, a distance of two hundred and thirty-four miles, between the 1st of January, 1880, and the 15th of December, 1881."

The proposition contained in this assigned error is by no means free from doubt, and we admit that, after a careful consideration of it, we are not clear that the conclusion reached is the proper one. The statute is ambiguous, and would admit both the construction placed upon it by the court below and that by counsel for appellee. To enter upon a discussion of the question would extend this already too lengthy opinion. In view, however, of the fact that it is but reasonable to presume the legislature intended that the road should be built continuously, so as to give, as soon as practicable, its benefits along the whole line; and the further fact that the court below has adjudged that the failure to build as much as eighty miles of road within any two consecutive years would forfeit the land grant upon all the line of road not then built, and that it does not clearly appear that this judgment is erroneous, we hold that this assigned error is not well taken.

This disposes of the two principal questions in the case, and virtually all the assigned errors, except perhaps the seventh, which is that "the court erred in its eleventh conclusion of law, in holding that the land grant from Palm Valley to Austin is within the terms of the law."

An ordinance to the constitutional convention of 1875 provided that, "Be it ordained by the people of Texas in convention assembled, that in view of the financial misfortunes now existing, no

railroad company chartered or holding grants under this state, which has heretofore organized and commenced work in good faith, shall be considered as having lost any of its rights, privileges or grants prior to the close of the session of the next legislature of this state, by virtue of the lapse of time between now and that time."

The next succeeding legislature adjourned August 21, 1876.

In this eleventh conclusion of law complained of, the court found: "The land grant for the twenty-one miles from Palm Valley to Austin is within the terms of the law. The road was built by December 28, 1876, and within one year after July 1, 1876. The law authorized the issuance of certificates upon completion of sections of ten miles. The forfeiture for not completing the forty miles would not destroy the right to the land upon that part upon which the road had been constructed within the terms of the law."

We are of opinion that, under the law and facts of the case, this finding was correct.

There being no error apparent in the judgment below, the same is affirmed.

JUDGMENT AFFIRMED.

[Opinion delivered June 2, 1882.]

NOTE.—This case should have appeared with cases decided at the Austin Term, but the record was mislaid.